## SIMMONS v. HARRIS.

No. 14442—Opinion Filed Dec. 16, 1924.

Rehearing Denied April 7, 1925.

(Syllabus.)

**1. Appeal and Error — Recall of Mandate After Filing Below.**

Although a mandate has been issued by this court and filed in the lower court, this court has jurisdiction to recall the mandate and reconsider the case where the mandate was issued as the result of fraud, mistake, or unavoidable casualty.

**2. Same—Reinstatement of Appeal — Withdrawal of Attorney as "Unavoidable Casualty."**

The withdrawal of. an attorney from a case in the Supreme Court, without notice thereof to his client, by reason of which the case is dismissed for want of prosecution constitutes an unavoidable casualty on account of which the appeal may be reinstated.

**3. Appeal and Error — Record — Opening Statement as Admission.**

An opening statement of counsel is not a part of the record in a cause on appeal unless made so by bill of exceptions or other appropriate proceeding; and remarks made by counsel in such opening statement do not relieve his adversary from establishing his case by legal evidence unless it was expressly intended that such remarks should constitute solemn admissions or that they were made for the purpose of dispensing with the formal proof of some fact.

**4. Same.**

Where the parties to an action fail to have the opening statement of counsel taken down by the court. reporter, and where the attorneys who tried the cause in the lower court stipulate that the case-made which omits the opening statements contains all the evidence and proceedings. and where the trial judge certifies that the case-made contains all the evidence introduced and proceedings upon the trial, it is apparent that said opening statements were not intended to be solemn admissions or to be relied upon as a part of the evidence.

**5. Vendor and Purchaser — Rescission of Contract—Equity Jurisdiction.**

Where the entire controversy turns upon

the question of whether a contract for the sale of real estate should be rescinded and canceled or whether the contractual right to elect to rescind has been lawfully exercised, the right to the possession of the property is a mere incident to the action and not the main issue; possession following, as a matter of course, a judgment rescinding and canceling the contract under which the party obtained possession thereof. Such an action is therefore one of equitable cognizance and not an action at law.

**6. Vendor and Purchaser—Breach by Vendee — Remedies of Vendor — Statutory Procedure.**

A vendor under a contract for the sale of real estate, upon default of the vendee, has a choice of remedies. Regardless of which remedy he elects to adopt, he must conform to the established rules of pleading and proof prescribed by the statute and decisions of this state for the particular remedy elected.

**7. Same—Default in Payments—Waiver of Right to Rescind.**

Where a vendor enters into a contract for the sale of real estate, giving him a right to declare the contract void on account of default in payments, and the vendee goes into possession of the property and makes default in payments on the purchase price, the vendor waives his privilege to rescind by conduct after default inconsistent with an intention to rescind the contract.

**8. Same—Rescission After Waiver of Right —Necessity for Notice to Vendee.**

Where the vendor, after default, has waived his option to rescind, before he can thereafter declare a forfeiture on account of such default, he must give the vendee timely notice of his intention to rescind, and fix a certain and reasonable time within which the vendee is required to perform his part of the contract; after such notice, the vendee may avoid the rescission by complying, before the date fixed, with the terms of his contract.

**9. Same — Restoration by Vendor as Prerequisite to Rescission.**

A party claiming a rescission of a contract for the sale of real estate, where the vendee is in possession and has paid a part of the purchase price, must restore or offer to restore everything of value which he has received under said contract from the other party, including all outstanding and unpaid notes. Failure to prove restoration is fatal to his cause of action.

Error from District Court, Seminole County; John L. Coffman, Judge.

Action by V. V. Harris against W. H. Simmons for cancellation of contract for sale of real estate. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with instructions to dismiss.

Davis & Patterson and McPherren & Wilson, for plaintiff in error.

Everest, Vaught & Brewer, Cutlip & Horsley, and Hunter L. Johnson, for defendant in error.

MASON, J. This action was commenced in the district court of Seminole county, Okla., by V. V. Harris, as plaintiff, against W. H. Simmons, as defendant. The parties will be referred to in this opinion as they appeared in the trial court.

On October 8, 1919, the plaintiff entered into a contract for the sale of real estate to defendant for the sum of $6,400 payable in installments, $800 being due in 1919, $700 on October 1, 1920, and the remainder falling due in installments of $700 each succeeding year, beginning December 1, 1921. The petition sets forth two causes of action. The first alleges the execution of the contract, a copy of which is annexed, and the default of the defendant in failing to pay the $700 installment due on October 1, 1920, and the 1920 taxes. The following provision is the only part of the contract material to a determination of this case:

"Third. That any failure on the part of the party of the second part to faithfully keep and perform each and all of the above conditions, covenants and agreements, or to make any of the payments at the time and in the manner above specified, shall render this contract **void at the option of said party of the first part**, and he may retain all payments made as agreed liquidated damages, and recover immediate possession of said premises."

The plaintiff asserts that he elects to rescind the contract as shown by the following language of the petition:

"Plaintiff states that by reason of the defendant's failure to keep the conditions of said contract, he is entitled to the immediate possession of said land and he elects to rescind said contract and to take possession of said land."

The prayer of the first cause of action is as follows:

"Wherefore, plaintiff prays judgment that the contract aforesaid be canceled, and that the plaintiff be decreed and adjudged to be the owner of said land in fee simple; that plaintiff have judgment for the possession of said land and for the sum of $700 damages for the breach of said contract, for costs and other proper relief at law or in equity."

The second cause of action adopts the allegations of the first and prays judgment

for the sum of $600 for rents and profits for the year 1920. Defendant filed a general demurrer, which was overruled and exceptions were duly saved. Thereupon the defendant filed an answer admitting default in the payments of the installments and taxes, but alleging that the plaintiff had waived his right to forfeit his contract and had extended the time of payment and performance of the contract until the 1st day of October, 1922. The court made findings of fact and conclusions of law in favor of the plaintiff, to which the defendant duly excepted. The judgment rendered by the court decrees a cancellation of the contract and awards the plaintiff the premises, judgment for the sum of $250 as the rental value during 1922, and, further, gives the plaintiff, as liquidated damages for the use of the premises, all payments made by the defendant on the purchase price, aggregating over $1,400. Defendant filed motion for new trial in due time assigning as grounds therefor that the findings of fact conclusions of law and judgment were not sustained by sufficient evidence and were contrary to law and other grounds. This motion was overruled and defendant filed his appeal.

At the outset we are met with a motion of plaintiff to dismiss the appeal. It appears that one A. M. Fowler was the attorney for the defendant in the lower court and caused the appeal to be filed herein, but refused to prepare briefs. The cause was dismissed by this court in December, 1923, for want of prosecution. In February, 1924, the defendant for the first time learned of the dismissal and promptly filed a motion to reinstate the appeal, which was granted by this court. Most of the questions presented by plaintiff's motion to dismiss were considered by the court when it granted the defendant's motion to reinstate the appeal. We have, however, again carefully considered the grounds alleged in the motion to dismiss.

In support of the plaintiff's response to the defendant's original motion to reinstate, we find an affidavit of A. M. Fowler, the attorney for defendant, wherein he states that in July, 1923, he notified defendant by letter that briefs must be filed within 40 days and asked for money to pay for the briefs and the fee due him; that between the 1st and 10th day of September he received a check for $25, which sum he kept; that he refused to file the briefs because his fee was not paid, and that he received no other sums from the defendant and had nothing further to do with the case. He

does not state that he notified the defendant of his intention to withdraw from the case or of his refusal to file said briefs. The defendant in response to the motion to dismiss has set forth several affidavits and has presented original letters and communications from A. M. Fowler. From an examination thereof, we find that under date of July 26, 1923, Fowler wrote his client asking for $25 to pay for printing briefs, but made no mention of fee. Neither did he intimate any intention to withdraw from the case. Under date of August 4th following he acknowledged the payment of $25, specifying in his signed receipt that the money had been paid him for printing of briefs in this particular case. It clearly appears from the affidavit of Fowler himself and the response filed by the defendant that Fowler gave no notice to the defendant that the case would not be prepared for presentation to this court. Mr. Fowler's conduct of this case cannot be condoned as mere negligence. For the purpose of this opinion, however, it is sufficient to say that an attorney grossly violates his duty to his client and this court when, after entering into a contract for representation and after filing an appeal and receiving money for printing briefs, he withdraws from said case without notice to the client and permits the case to be dismissed for want of prosecution. A dismissal resulting from such withdrawal without notice constitutes an unavoidable casualty for which this court will give relief. It clearly appears that the defendant exercised due diligence in applying to have the case reinstated as soon as he ascertained the fact of the dismissal.

We deem it sufficient to refer only to the following opinion written by the late Justice Kane in support hereof: McLaughlin v. Nettleton, 47 Okla. 407, 148 Pac. 987, and the same case in 69 Okla. 74, 183 Pac. 416.

Even though a mandate has been issued by this court and filed in the lower court, this court has jurisdiction to recall the mandate and reconsider the case where the mandate was issued, as the result of fraud, mistake, or unavoidable casualty, St. Paul Fire & Marine Insurance Co. v. Peck, 40 Okla. 396, 139 Pac. 117; Ehrig v. Adams, 67 Okla. 157, 169 Pac. 645; Garland et al. v. Union Trust Co., 49 Okla. 654, 154 Pac. 676. Under the facts disclosed by the record in this case, we feel that justice demanded the reinstatement of the appeal.

As further grounds for dismissal, plaintiff insists that the case-made is incomplete because the opening statements of counsel are not included therein. This contention is not

tenable. In Sullivan v. Williamson, 21 Okla. 844, 98 Pac. 1001, the court, speaking through Mr. Justice Kane, laid down the following rule:

"The opening statement of counsel is never part of the record, unless made so by bill of exceptions or some other appropriate proceeding, and it is rare indeed that the opening statement is ever preserved for the purpose of predicating error upon it."

The cases cited by plaintiff in fact adhere to this principle. They assert that only where the so-called statement of counsel is distinct and formal and made for the purpose of dispensing with formal proof of some fact may it be looked to for proof of a fact material to the plaintiff's cause of action. Nothing in this record indicates a purpose upon the part of either the plaintiff or defendant to consider the opening statement as having been made for the purpose of dispensing with proof. The reporter was not asked to include the statement in his notes. The stipulation of counsel attached to the case-made states that all the evidence upon which the judgment was based is contained in the record. The judge who tried the case certifies that it contains all of the evidence upon which he relied. While the stipulation of attorneys and the judge's certificate are not necessarily conclusive, yet they are at least persuasive that counsel did not consider the opening statements as formal admissions and that the court did not consider the opening statements as supplying any evidence in support of the judgment which he rendered. We therefore hold that the omission of the opening statements in the case-made is immaterial. The motion to dismiss is denied.

The defendant next urges that the petition failed to state a cause of action for two reasons: First. The plaintiff did not restore or offer to restore anything of value which he had received under the contract. Second. The plaintiff had waived his right to rescind and declare a forfeiture, and could not thereafter exercise that right without giving to the defendant notice of his intention to rescind and a reasonable opportunity to redeem his property. This question, however, is not assigned as error, and therefore will not be considered. We think it unnecessary to decide this case upon the question of whether or not the petition is defective, but will base our conclusion upon the sufficiency of the evidence to support the findings of fact and conclusions of law made by the trial court.

The action must be termed one for rescission in equity. The plaintiff asked to rescind and cancel the contract. He did not seek judgment upon the notes evidencing the indebtedness. The plaintiff contends that the proceeding is an action at law in the nature of ejectment. We cannot reconcile such a contention with the allegations of the petition filed by the plaintiff and set out in this opinion. The prayer is for cancellation and equitable relief. The case was tried to the court as an action in equity. The recovery of the possession of the land is a mere incident to the cancellation of the instrument and does not change the proceeding to an action at law. This court has repeatedly held that where an action is in the main for the rescission of a contract and the possession of the premises follows as an incident to the equitable relief of cancellation, then the action is one of equitable cognizance and is not one for the recovery of specific real property. Andrews v. Thayer, 69 Okla. 227, 171 Pac. 1117; Moore v. Kelly, 57 Okla. 348, 157 Pac. 81.

A considerable portion of the plaintiff's answer brief is devoted to arguing the effect of the defendant's failure to demur. This, no doubt, arose by reason of the fact that the reporter failed to insert the demurrer and the order of the court overruling the same in the case-made until after the answer brief had been filed. It appears from the amendment, however, that the demurrer was filed, overruled, and exceptions duly taken, but since the action of the court in overruling this demurrer is not presented by the defendant as an error, we are not passing upon this question.

In an action in equity, a demurrer to the evidence or a motion to direct a verdict if tried to a jury is not necessary to present the facts to this court for review on appeal. It is only necessary that a timely motion for a new trial be presented in order that the court may have an opportunity to correct its errors. Papoose Oil Co. v. Swindler, 95 Okla. 264, 221 Pac. 506; McDonald, Adm'r, v. Strawn, 78 Okla. 271, 190 Pac. 558. In this case, the defendant set up in his motion for new trial, among others, the ground that the evidence was insufficient to sustain the findings of fact and conclusions of law and assigned the same ground, among others, in the petition in error.

It is therefore our duty to review the evidence in this case to ascertain whether the judgment of the court is sustained thereby.

The petition alleges default in two particulars only: First. The payment of $700

due October 1. 1920; and second, the failure to pay the 1920 taxes. To the defendant's answer alleging waiver and extension, plaintiff filed a general denial. He did not charge any breach of the extension agreement. He merely denies the making of such agreement and denies any waiver of his right to rescind. Defendant, in his evidence, admits he continued in default until September, 1921, when the plaintiff called the defendant to his office in Oklahoma City to consider adjustment of the payments. The plaintiff himself testifies concerning this interview. He says that on September 19, 1921, at Oklahoma City, he agreed with Simmons that he would carry the mortgage over for a year if the defendant would pay a certain per cent. of the 1921 crops and give a chattel mortgage on the crop for the following year. Plaintiff admits the execution and delivery of the chattel mortgage and admits that he filed the same of record. He says that a few days thereafter he discovered the defendant's estimate of the amount of crop was excessive when he sent his representative to investigate. After the investigation, and on October 6, 1921, plaintiff wrote the following letter:

"I received your letter of the 4th enclosing check for $40, which I will app y on your notes. I think you better drop me a card every week so that I may know just what you are doing. It appears that you were badly mistaken about the number of bales of cotton you have; however, if you will pay three-fourths of the cotton you raised, and one-half of what the share cropper's cotton brings, I am willing for you to try it another year. Mr. Shults reports that the place was well worked, and that it is not your fault that the crop is so short. You have got your corn and your sorghum and other stuff, out of which I would be entitled to rent and I will expect the payment from the cotton. Then another thing that I would want you to do is to pay the 1920 taxes."

Thereafter, in his testimony. the plaintiff admits that on October 6, 1921, he expected the defendant to continue in possession of the place for the year 1922. Plaintiff sent the defendant no further letters. Without warning and on October 27, 1921, just 21 days after the foregoing letter, plaintiff filed this action, attempting to declare a rescision of the contract. Plaintiff admits that the defendant executed negotiable notes aggregating $6,400: that defendant had paid a total of over $1,400 thereof, up to the date the suit was filed.

Plaintiff admits that the negotiations starting on September 19, 1921, and continuing through until October 6, 1921, related to the installment due in 1920, and the 1920 taxes, which are the defaults alleged in the plaintiff's petition. We, believe this evidence establishes an agreement by the plaintiff to postpone the time of payment on all delinquent items and an installment not due at the time of the filing of the suit to a definite date, for a valuable consideration, and therefore this action was prematurely brought. Adams v. Ferguson, 44 Okla. 544, 147 Pac. 772; Ardmore State Bank v. Lee, 61 Okla. 169, 159 Pac. 903.

We further hold, however, that the letter of October 6, 1921, is sufficient to waive the right of the plaintiff to a strict performance of the contract, thus necessitating a demand and notice of his intention to rescind before he can declare a forfeiture. It is therefore not incumbent upon us to further discuss the extension contract.

The plaintiff had several remedies. He could have filed suit for the entire amount and for the foreclosure of the contract, in which event the defendant would have had an opportunity to redeem the premises. He could have filed a suit on the delinquent notes, in which event the defendant could have paid the judgment and retained the premises. He elected to disregard either of these remedies and filed an action for cancellation and rescission in equity. He had permitted the defendant to continue in default for nearly a year. He had negotiated with the deefendant for extensions of payments. He had written a letter on October 6th advising defendant he could retain the premises for another year. To permit the plaintiff to suddenly rescind this contract without notice to defendant, and without making a demand upon the defendant or giving the defendant any opportunity to protect his property or his rights under the contract, would enable the plaintiff to adopt in the guise of an equitable remedy a procedure far harsher, more unjust and more unreasonable than either of the legal remedies to which he was entitled. We cannot countenance a so-called equitable action which works a greater hardship upon the litigants than would the legal remedy, if pursued.

In fact, the great weight of authority, in construing the rights of the parties under a contract like that at bar, holds that even slight circumstances are sufficient in a court of equity to prevent a party from taking the benefit of such a stipulation, and where a party has done any act inconsistent with the intention to hold his opponent strictly to his part of the agreement, he is to be

taken to have waived it. The contract before the court is not automatically rendered void upon the default. It grants to the plaintiff the option to elect whether he will declare a forefeiture on account of the default of the defendant, or affirm the contract and sue in foreclosure and seek judgment for the amount of the purchase price. Under such a contract, the vendee has no means of ascertaining which remedy the plaintiff will pursue except from the statements and conduct of the vendor. If the conduct and statements of the vendor indicate a purpose to affirm the contract in spite of default and permit the vendee to retain the property and pay therefor, the vendor cannot suddenly and without notice to the vendee right about face and declare a forfeiture. He must first give to the vendee notice that unless the contract is complied with, according to its terms within a definite and reasonable time, the vendor will elect under his contract to declare a forfeiture. The plaintiff herein did not allege in his petition the giving of any notice or demand or of any opportunity to the defendant to perform. The evidence wholly failed to establish such notice, and in truth the plaintiff admits the failure to notify defendant of his intention to rescind.

We have been favored with exhaustive and able briefs by both parties. We have carefully examined the authorities. Those cases involving contracts which automatically become void upon default are not applicable to the facts before us, because such contracts require no decision or election on the part of the vendor. To distinguish all there cases would serve no particular purpose and would render this opinion entirely too lengthy. We therefore content ourselves with holding that by the plaintiff's own admission and letters, he has waived his right to declare a forfeiture under the contract until he gives to the defendant notice of his intention to rescind and an opportunity to redeem the property. Moore v. Kelly, 57 Okla. 348, 157 Pac. 81; Cue v. Johnson (Kan.) 85 Pac. 598; Luther v. Hekking (Kan.) 204 Pac. 523; Stark v. Norton (Ariz.) 211 Pac. 66: Leballister v. Morris ((Cal.) 211 Pac.. 851; Dillingham v. Kerr (Tex. Civ. App.) 139 S. W. 911.

Nowhere in the proceedings or the evidence do we find an offer from the plaintiff to restore either the $1,400 paid by the defendant on the purchase price or the unpaid notes. It is true that the plaintiff introduced the notes in evidence as exhibits, but he did not ask that they be canceled. These notes being negotiable, the introduction thereof was necessary to establish the ownership of the contract. Unless he was the owner of the indebtedness secured by the contract, plaintiff could not assert any rights on account thereof and could not rescind the contract. If the plaintiff intended by the introduction of these instruments to have the same canceled, in judgment, then the judgment of the court should have been rendered on the notes and have been one in foreclosure requiring the sale of the premises to satisfy the judgment, thereby giving the defendant an opportunity to redeem his property. Under the judgment of the court as it now stands, the defendant is deprived of the land, the plaintiff is permitted to retain the $1,400 paid and the outstanding notes are not canceled. The defendant, even though he offered to pay the entire indebtedness at this time, could not redeem his property. The rule is well established in this jurisdiction that a failure to restore, or offer to restore, everything of value received by virtue of a contract is fatal to an action to rescind the contract. Section 5079, Comp. Stat. 1921; Moore v. Kelly, supra; Nelson v. Golden, 84 Okla. 29, 202 Pac. 308, and numerous cases therein cited.

This court, in the body of the opinion of the case Moore v. Kelly, supra, uses the following language:

"The defendants next complain that the plaintiff, neither in his petition nor in his proof, offered to retain the $1,000 note executed to him by defendant, M. J. Moore, at the time the contract for deed was entered into."

In 18 Ency. Pleading and Practice, 829. we find the following:

"'In suits for the rescission and cancellation of contracts the court applies the familiar maxim of equity, of almost universal application, that he who seeks equity must do equity. The plaintiff will not be permitted to repudiate his contract and still retain the benefits which he has derived from it, and his desire and willingness to restore what he has received must appear in the bill or complaint; otherwise he will have no standing in a court of equity.'

"Section 986, Rev. Laws 1910, provides that in order to rescind a contract the party claiming a rescission must restore or offer to restore everything of value which he has received from the other party. It seems to us elementary that the plaintiff should have tendered the notes both in his pleadings and proof. It would be inequitable and unfair to say that he may still retain the note and yet oust the defendant from the property for which the note was given in payment."

In view of the foregoing conclusions, we

deem it unnecessary to discuss any further assignments of error. We hold that the findings of fact and conclusions of law of the lower court are not sustained by the evidence; that the judgment of the court must be reversed, with directions to the trial court to dismiss the petition of the plaintiff.

McNEILL, C. J., NICHOLSON, V. C. J., and JOHNSON and BRANSON, JJ., concur.

Note.—See under (1, 2) 4 C. J. § 3310 (1926 Anno); (3) 4 C. J. § 1703, 38 Cyc. p. 1476 (1926 Anno); (4) 4 C. J. § 1703; (5) 39 Cyc. p. 1994; (6) 39 Cyc. p. 1905 (1926 Anno); (7) 39 Cyc p. 1393 (1926 Anno); (8) 39 Cyc. p. 1289; (9) Cyc. pp. 1378, 1380.