## ST. LOUIS-S. F. RY. CO. v. HOBART MILL & ELEVATOR CO.

No. 13496—Opinion Filed April 21, 1925.

Rehearing Denied Sept. 8, 1925.

**1. Carriers—Interstate Shipment — Action for Default in Furnishing Cars—Jurisdiction of State Courts.**

The state courts have jurisdiction of an action of shipper against carrier for failure to furnish a reasonable number of cars within a reasonable time, where the action is based on a breach of the common law duty of the carrier to furnish cars within a reasonable time although it be an interstate shipment.

**2. Same—Elements of Damage for Delay—Decline in Market and Increased Freight Rates and War Tax.**

For unreasonable delay in furnishing cars for transportation of wheat to certain points and at a given time, the shipper is entitled to receive damages sustained by reason of a decline in the market price of wheat, caused by an increase in freight rates and levy of war tax, which took effect on a date subsequent to the time when the wheat would have been shipped had cars been furnished within a reasonable time.

**3. Same—Duty of Carrier as to Furnishing Cars.**

The law does not require that a station agent be authorized to contract with a shipper to furnish a certain kind of car at a certain hour of a certain day, in violation of prescribed rules of the company, and in discrimination against other shippers, but it does require that he be authorized to furnish reasonable facilities within a reasonable time for carrying on the business of the public, either upon his own authority or upon his demand or notice to the company: and, where a car has been demanded by a shipper and promised by an agent, and a reasonable time taken for furnishing same, then. in the absence of satisfactory showing for an unreasonable delay, the company will be held liable for the damages resulting from such delay, Midland Valley Ry. Co. v. Larson, 41 Okla. 360, 138 Pac. 173,

**4. Same — Appeal—Question of "Unreasonable Delay" for Jury.**

The question of what is an unreasonable delay in furnishing cars by a common carrier is one of fact, and the finding of a jury, when properly instructed by the court as to the law governing the question, will not be disturbed by this court on appeal.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Kiowa County; Thomas A. Edwards. Judge.

Action by Hobart Mill & Elevator Company against St. Louis-San Francisco Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

W. F. Evans, Stuart, Sharp & Cruce, and W. T. Stratton, for plaintiff in error.

Rummons & Hughes, for defendant in error.

Opinion by JONES, C. This action was instituted by defendant in error as plaintiff, in the district court of Kiowa county, Okla., against plaintiff in error, as defendant, in the trial court to recover certain sums of money as damages resulting from the failure of the defendant railway company to furnish certain cars which had been ordered by the plaintiff to be used in shipping wheat from Hobart, Okla., to gulf ports during the months of July and August, 1920. Plaintiff further alleges that the price of wheat in Hobart, Okla., was based on the price of wheat at Galveston, Tex., less cost of carriage. That plaintiff was engaged in the business of buying and shipping wheat, and that he ordered cars from the agent of the defendant railway company at various times to be used in shipment of wheat, giving ample notice, and that the defendant railway company failed and refused to deliver or furnish a sufficient number of cars, and in fact only furnished about 12 per cent. of the cars ordered, prior to August 26, 1920, on which date there was an advance in freight rates, increasing the rate on wheat per hundredweight from Hobart to Gulf ports from 37 to 50 cents, and that on said date a war tax of 8.034 cents per bushel took effect, thereby causing a decline in the price of wheat at Hobart in the amount equal to said advance in freight rates and the war tax, and that by reason of the failure of said defendant railway company to furnish the cars ordered within a reasonable time, plaintiff was damaged in the sum of $1,794.79, on 22,000 bushels of wheat purchased for shipment prior to August 26, 1920, which was then in the elevator and which plaintiff would have shipped had cars been furnished.

The defendant's answer consists of a general denial, and a further plea that there was an unprecedented demand for grain cars, such as could not have been anticipated by defendant, and that there was a congestion of traffic over defendant's entire line of railway, and on the line of all railway companies throughout the United States, brought about by conditions over which the defendant had no control, and that it was impossible and impractical for the defendant to furnish cars to the plaintiff for the transportation of grain at the times herein mentioned.

The case was tried to a jury on the 20th day of December, 1921, resulting in a verdict for plaintiff for damages in the sum of $1,172.12; motion for a new trial was filed and overruled, and judgment rendered by the court in conformity to the verdict of the jury; from which order and judgment appellant prosecutes this appeal and assigns numerous specifications of error, and in its brief presents five different propositions as ground for reversal of the judgment of the trial court.

First, the appellant contends that the trial court was without jurisdiction to try and determine the rights of the parties in this case for the reason that the cars to be furnished were interstate cars to be used in interstate shipment, and therefore under the Hepburn Act of 1906, and other authorities cited, that the Interstate Commerce Commission and the federal courts are the proper tribunals in which such litigation should be conducted. We think, however, this contention has been determined adversely to appellant's contention by the Supreme Court of the United States in the case of Pennsylvania Railroad Company v. Puritan Coal Mining Company, 237 U. S. 121, and we quote the syllabus of that case as follows:

"Section 8 of the Act to Regulate Commerce gives the shipper a right of action against the carrier for damages occasioned by his doing an act prohibited by the statute, and section 9 gives the shipper the option to proceed either before the Interstate Commerce Commission or in the federal courts.

"Construing sections 8 and 22, however, in connection with the statute as a whole, the Act to Regulate Commerce is both declaratory and creative, and while shippers are given new rights, existing causes of action are preserved and the jurisdiction of state courts is not superseded, in cases in which the decision does not involve the determin-

ation of matters calling for the exercise of administrative power and discretion of the Commission or relate to subjects over which exclusive jurisdiction is given to the federal courts.

"While the federal courts may have exclusive jurisdiction of a suit brought to declare that a rule of practice promulgated by the carrier is unfair, a suit for damages occasioned by the violation or discriminatory enforcement of the carrier's rule, fair on its face and not attacked as unfair, does not involve administrative questions but only those of fact; and even though for damages arising in interstate commerce, such a suit is not within the exclusive jurisdiction of the federal court, but may be prosecuted either in those courts or in the state courts.

"The state courts have jurisdiction of an action of the shipper against the carrier to furnish a reasonable number of cars, whether the action be treated as one for breach of the common law duty to furnish the cars or for unjust discrimination in allotting cars to another shipper in violation of the carrier's own rule to furnish all the shippers on an equal pro rata basis. The jurisdiction of the state court is not defeated because the breach of common law duty is also an unjust discrimination.

"Motive for breach of common law duty of the carrier to furnish a reasonable number of cars is immaterial, and what was a proper supply under the circumstances is a matter of fact.

"While ordinarily, a shipper on reasonable demand is entitled to all the cars it can promptly load, that right is not absolute, and a carrier is not liable for failure to supply cars as the result of sudden and great demands which it had no reason to apprehend, but in a case of car shortage it is bound to treat shippers fairly if not identically.

"Where there is a shortage and the shipper complains that the carrier's rule of distribution is unfair, the question is for the Commission (Morrisdale Coal Co. v. Penna. R. R., 230 U. S. 312), but where the shipper does not attack the rule itself, but complains that the carrier refused to furnish the number of cars it was entitled to under the rule, while other shippers were furnished more cars than they were entitled to under the same rule, a preliminary finding of the Commission is unnecessary; and even if the shipments were interstate, the state and federal courts have jurisdiction."

The fourth paragraph of the Pennsylvania Case clearly states the rule and holds that the state courts have jurisdiction of actions of the character such as we are here dealing with. Appellant contends that the plaintiff's petition raises the question of an unjust discrimination in the distribution of cars, but we find nothing in the petition which justifies this contention. It is clearly

an action based on failure of the defendant to furnish cars on reasonable demand. Appellant further contends that the Act of February 28, 1920, section 1 of the Interstate Commerce Act (1923 Supplemental U. S. C. S. 1916, sec. 8563), was amended by the Transportation Act of 1920, paragraph 10, but we are unable to see where the amendment affects the question of jurisdiction, nor does it relieve the railroad company of the common-law duty to furnish cars on reasonable demand. We therefore find that the plaintiff's petition states a cause of action and that the state courts have jurisdiction of such matters.

The second proposition urged by appellant is that the trial court should have sustained a demurrer to plaintiff's evidence. The facts, as disclosed by the evidence, reasonably tend to show that the defendant railway company furnished only 12 per cent. of the cars ordered, and does not show that any effort had been made on the part of defendant to gather or accumulate cars preparatory to the shipment of wheat along its line of railway, and unquestionably shows that the cars were not furnished, and while the defendant avers in its answer that it was prevented from furnishing cars by reason of facts and conditions over which they had no control, the evidence was in no wise conclusive on this point and all of the questions raised were questions of fact for the determination of the jury under proper instructions, and the court having properly instructed the jury on all questions of law involved, and the jury having found adversely to the defendant's contention, this court has no authority to reverse the judgment of the trial court on questions of this kind.

The third proposition urged is that the trial court committed error in refusing to give a requested instruction directing the jury to return a verdict in favor of the defendant, but we find no merit in this contention. The fact that the cars were not furnished is undisputed and the great weight of authorities hold that it is the duty of the railroad companies to make all necessary preparations to handle the business or traffic over their lines which may be reasonably anticipated, and are only excusable by reason of certain exceptions to the general rule, and in our judgment the defendant failed to bring itself within the sphere of any of the exceptions known to the law.

The fourth proposition urged is that the court committed error in giving certain instructions, which were duly excepted to by

the defendant. The instruction No. 3, which is complained of, is based on the rule that it is the duty of railroad companies to provide and maintain reasonable, adequate, and sufficient facilities for the transportation of all commodities which ordinarily and reasonably might be expected to seek transportation along its lines, and that it was the duty of the railroad companies, upon reasonable demand having been made to furnish cars, or if the delay was occasioned by reason of the failure of the employes of the defendant to use reasonable care and diligence in furnishing said cars, and instructing the jury that the failure of the company in either event would entitle plaintiff to recover such amount of damages sustained as the direct and proximate result of the failure of the defendant to furnish cars. The plaintiff's allegations of damages were based on the decline in the market of wheat at Hobart, resulting from the increased freight rate and war tax, and appellant contends that this was not the proper measure of damages, and cites 10 Corpus Juris, 446, p. 311, which announces the following rule:

"Delay in Furnishing Cars. For unreasonable delay in furnishing cars for transportation of goods, the shipper is entitled to recover the difference between the market value at the time when the goods should have arrived at destination and their value at the time when they actually did arrive"

—which is a correct rule of law and we think is substantially the rule relied on in this case. The plaintiff could have alleged that there was a decline in the price of wheat in the Gulf port markets to which he shipped, and then by the introduction of the evidence which was introduced he would have disclosed the reason for the decline; he merely pleaded the reason rather than the result, and while this may be objectionable in some particulars, it was sufficient as against a demurrer to the petition and a demurrer to the evidence, and in fact the record discloses that there was a decline probably other than that complained of, but the decline caused by the increase of freight rates and the war tax by reason of the fact that the plaintiff was forced to deliver his wheat at the Gulf ports was the most certain and definite damage that could have been shown, and we think a proper measure of damages in this case. The appellant next complains of the error of the court in refusing to permit the introduction and order promulgated by the Interstate Commerce Commission, wherein the Commission calls attention to the shortage of equipment and congestion of traffic, which ex-

isted over a large number of railroad lines, including the line of the appellant, and offers suggestions looking to some relief of the situation, and other orders of a similar nature were offered in evidence and objected to by the plaintiff, which objections were sustained by the court, of which appellant complains, but no authority is called to our attention which authorizes the introduction in evidence of such documents, and from an examination of same we find but little, if any, facts contained therein that would be material evidence in the case at bar, and taken as a whole we think would be only calculated to confuse the issues and shed no light whatever upon same, and would be no material aid to the jury in reaching a proper determination of the issues involved, and to hold that such documents were competent evidence, we think, would be a dangerous rule and a departure from the well-established and defined rules of evidence. It is true that orders of the Interstate Commerce Commission establishing freight rates are given the same weight and consideration as statutory enactments or laws and when properly identified and certified may be offered in evidence, but we do not understand that this rule is sufficient in breadth to authorize the introduction of all orders of every kind and character issued by the Interstate Commerce Commission in evidence.

The appellee cites the case of Shoptaugh v. St. Louis & San Francisco Railroad, 147 Mo. App. 8, 126 S. W. 752, in support of the sufficiency of the allegations of the petition, and the case of Toledo & O. C. R. Co. v. Wren, 78 Ohio St. 137, 84 N. E. 785, in support of the allegations as to the measure of damages, and we find these authorities to be in point, and the case of Atlantic Coast Line Railway Co. v. Geraty (C. C. A.) 166 Fed. 10, 20 L. R. A. (N. S.) 310, in support of the instruction No. 3 given by the court, which clearly sustains same, and Covington Stock Yards Co. v. Keys, 139 U. S. 128, 133, 35 L. Ed. 73-76, in support of the allegations of plaintiff's petition as to the duty of railroad companies to provide suitable and necessary means and facilities for receiving commodities offered for shipment over its railroads, etc.

These, and various other authorities cited, we think clearly sustain the right of the plaintiff to recover in this case, and the instructions given, taken as a whole, we think fairly present the law of the case, and present both the theory of the plaintiff and the theory of the defendant, and finding

no error, we recommend that the judgment of the trial court be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 12 C. J. p. 134, § 197 (1926 Anno). (2) 10 C. J. p. 311, § 446; anno. 8 L. R. A. (N. S.) p. 112; 44 L. R. A. (N. S.) p. 655. 4 R. C. L. 676; 1 R. C. L. Supp. 1196. (3) 10 C. J. pp. 72, 73, § 66; p. 218, § 298. (4) 4 C. J. p. 851, § 2834; 10 C. J. p. 75, § 69.